UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD RYAN MCGREW,

        Plaintiff,                      CIVIL ACTION NO. 11-13196

    vs.                               DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be denied, Defendant's Motion for Summary Judgment (docket no. 11) be granted, and Plaintiff's complaint be dismissed.

**II.**    **PROCEDURAL BACKGROUND**

On February 22, 2008 Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income alleging disability beginning February 1, 2008. (TR 125-35).  The applications were denied and Plaintiff filed a timely request for a *de novo* hearing.  On January 27, 2010 Plaintiff appeared with counsel in Flint, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Denise McDuffie Martin, who presided over the hearing from Orland Park, Illinois.  (TR 32-62).  Vocational Expert (VE) Judith Findora also appeared and testified at the hearing, as did medical expert Dr. Larry Kravitz, Ph.D. In a May 25, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because he was capable of performing past relevant work as a ski lift operator, fast food worker,

1

cleaner, and machine operator. (TR 25). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. The parties filed cross Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III. PLAINTIFF'S TESTIMONY, MEDICAL EXPERT TESTIMONY, AND RECORD EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was twenty-three years old on his alleged disability onset date. (TR 48, 125). He obtained a high school diploma and attended some college classes but did not earn a college degree. (TR 36, 448). Plaintiff testified that his past relevant employment includes work as a ski lift operator, fast food worker, and cleaner. He lives with his mother and father, except during the winter months when he lives alone while his parents travel. (TR 39-40). He testified that his mother does the grocery shopping, his father takes care of the housework and yard work, and he assists with chores that don't require lifting. (TR 40-41). Plaintiff testified that he is able to cook a simple meal using a microwave oven, wash dishes, and clean laundry. (TR 49).

Plaintiff testified that his case worker checks in on him during the winter months, and he is aware that he can call his sister and uncle if he has a panic attack or episode of paranoia. (TR 42). He stated that he goes grocery shopping with his sister when his parents are vacationing, although he sometimes has to leave the store and wait in the car if he begins to experience a panic attack. Plaintiff has a driver's license and is able to drive. He testified that he takes Klonopin, Neurontin, and Desyrel. (TR 42-43). He stated that he sees a psychiatrist on a regular basis, but reported that it had been several months since his last therapist visit. (TR 53). Plaintiff reported that he plays the guitar and sits all day because he cannot leave the house. (TR 43-44).

**B.      Medical Expert Testimony**

Medical expert Dr. Larry Kravitz, a psychologist, testified that Plaintiff has a psychiatric history of anxiety disorder, panic disorder, major depressive disorder possibly related to substance abuse detox, bipolar disorder, and social phobia. He testified that Plaintiff would be limited to a job requiring only two-step instructions and brief, superficial contact with others. (TR 55-58).

**C.      Medical Evidence**

Because Plaintiff challenges the ALJ's evaluation of his mental impairments and does not significantly address any issue related to his physical impairments, this Report and Recommendation will focus on Plaintiff's mental condition only. Plaintiff attended two sessions with Hurley Mental Health Associates between February 22, 2006 and March 23, 2006. Plaintiff presented on intake with reports of social phobia and agoraphobia, recent suicidal thoughts, and excessive worry. (TR 257). The intake note states that Plaintiff was involved in a one year relationship. (TR 259). It also notes that Plaintiff had recently been charged with a DUI and subsequently admitted to an opiate dependency. (TR 255-56, 262). His treatment at Hurley was terminated after the second session because he failed to pay for services. (TR 254).

In November 2006 Plaintiff presented in an intoxicated state to the Hurley Medical Center with complaints of suicidal thoughts, mild depression, and intentional drug overdose. (TR 270). Plaintiff denied any medical problems, had a normal medical examination, but indicated that he recently broke up with his girlfriend and stopped taking his medication for depression. (TR 272-73). The discharge summary documents a diagnosis of major depressive disorder, general anxiety disorder, and a GAF of 50. (TR 272). The discharge summary also reports that Plaintiff was alert and oriented times three, cooperative, with normal concentration and comprehension and intact

3

memory, but with slowness of speech and poor insight and judgment. (TR 272).

Treatment notes dated January 3, 2007 through January 30, 2007 indicate that Plaintiff obtained multiple prescriptions for phenobarbital and reveal that Plaintiff changed one prescription from 0.5 mg to 1.0 mg without physician consent. The pharmacy refused to fill the prescription and his doctor would not give him another prescription. (TR 278). Plaintiff failed to report to his January 5, January 9, January 15, and January 18 appointments. (TR 278). On January 22, 2007 Plaintiff presented to his therapy session with his mother. The therapist note states that they spent forty-five minutes discussing Plaintiff's dishonesty, manipulation, and his persistent refusal to accept responsibility. Plaintiff was diagnosed with antisocial personality disorder, poly substance dependency on opiates with noncompliance and resistance to treatment, and generalized anxiety with social phobias. (TR 281). The therapist recommended that Plaintiff go to a halfway house offering a long-term highly confrontive but supportive therapeutic environment. (TR 281). On January 30, 2007 the therapist terminated treatment, noting that Plaintiff was still manipulative and resisting treatment. (TR 282-83).

From July 5, 2007 through July 12, 2007 Dr. C. McGoey evaluated Plaintiff after Plaintiff was admitted to Brighton Hospital for detoxification and rehabilitation from continuous opiate dependency. (TR 420-26). Dr. McGoey noted that Plaintiff was slow in responding to questions and directions, and at times forgot what he was asked, but appeared also to have periods of complete lucidity and normalcy. Dr. McGoey observed that Plaintiff was oriented times three, his judgment and insight were poor, his mood and affect were flat, and his recent and remote memory was fair. Plaintiff was diagnosed with opiate and benzodiazepine/barbiturate dependence, bipolar affective disorder, anxiety, social phobia, and panic disorder. (TR 426).

4

On August 2007 Dr. Michael Gotlib documented that Plaintiff was stable on his medication, alert and oriented times three, with no auditory or visual hallucinations, and no suicidal or homicidal ideations. (TR 264). In October 2007 Plaintiff was assessed with slow mentation, slowed speech, and poor insight. (TR 339-41). In November 2007 Dr. Richard Robinson of Recovery Unlimited Treatment Center assessed Plaintiff and observed that he was irritable, hopeless, physically acting out, stealing, with an anxious and depressed mood, but that he was otherwise calm, open, cooperative, coherent and logical. (TR 382-83). Dr. Robinson observed that Plaintiff had normal speech, was oriented to person, place, and time, had fair insight, good judgment, an intact memory, and average cognitive function. (TR 383). Dr Robinson indicated that Plaintiff was not ready to detox, and he was at a low risk for behavioral complications related to panic attacks. (TR 385). Dr. Robinson opined that Plaintiff was at a low severity level at admission and assigned him a GAF of 57. (TR 386-87).

On January 30, 2008, licensed psychologist Dr. Thomas Shazer, Psy.D., assessed Plaintiff's competence to stand trial on a charge of Theft of a Financial Transaction Device, and drafted a letter to Judge Reader of the 44th Judicial Circuit Court for the County of Livingston explaining his conclusion that Plaintiff met the statutory criteria to be considered incompetent to stand trial. Dr. Shazer opined that although Plaintiff was presently incompetent to stand trial, there was a substantial likelihood that his symptoms would remit and he could be rendered competent to stand trial if he underwent appropriate treatment for his psychological conditions. (TR 480-81).

Treatment records from McLaren Family Care in Fenton dated February 25, 2008 indicate that Plaintiff was diagnosed with schizophrenia and bipolar disorder. (TR 400). On May 21, 2008 limited licensed psychologist Carrie Neubecker and licensed psychologist Dr. Matthew Dickson,

5

Ph.D completed a psychiatric/psychological medical report for the state disability determination service. (TR 448-51). The medical evaluation states that Plaintiff reported that he has social phobia, poor memory, and an inability to focus when other people are around. The report further indicates that Plaintiff reported that he has had two to three mild and unexpected panic attacks, his most recent in April 2008 then one year prior to that. The report states that Plaintiff reported generally getting along well with others and having very good interactions with co-workers. During the examination, Dr. Dickson observed that Plaintiff was socially appropriate and pleasant, his eye contact was appropriate, but his appearance was peculiar. (TR 449). He wrote that Plaintiff lived with his girlfriend and expressed an interest in writing and recording music. (TR 449). He wrote that Plaintiff was independent in self care and personal hygiene, was able to cook, clean, and wash laundry, and reported spending his time playing his guitar, running errands with his girlfriend, socializing with his girlfriend's friends, and visiting his mom. (TR 449). Dr. Dickson observed that Plaintiff's speech was unimpaired, his mental activity was spontaneous and organized, there was no evidence of hallucinations, delusions, obsessions, suicidal or homicidal ideations, and his affect was appropriate to mood. (TR 450). Dr. Dickson opined that Plaintiff's psychological condition would moderately impair his ability to perform work-related activities. He diagnosed Plaintiff with anxiety disorder, panic disorder without agoraphobia, opiate dependence in early full remission, and assigned a GAF of 60. (TR 451).

On May 29, 2008 Dr. Ashok Kaul completed a Mental RFC Assessment and Psychiatric Review Technique for the state disability determination service and concluded that Plaintiff was capable of performing unskilled work. (TR 454-72). Dr. Kaul found that Plaintiff was moderately limited in his abilities to understand, remember, and carry out detailed instructions, maintain

6

concentration and attention for extended periods, and interact appropriately with the general public. He was also moderately restricted in his abilities to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in the work setting. (TR 455-56). In all other areas Plaintiff was not significantly limited, including in his ability to understand, remember, and carry out simple instructions on a sustained basis. (TR 455-57). In his Psychiatric Review Technique, Dr. Kaul determined that Plaintiff was mildly restricted in activities of daily living, moderately restricted in maintaining social functioning and concentration, persistence, or pace, and he had no episodes of decompensation. (TR 469). He concluded that the evidence did not establish the presence of "B" or "C" criteria.

On February 18, 2010 Alena Clinkston, LLMSW, drafted a generic letter stating that Plaintiff met with her in her role as case manger on four separate occasions. (TR 492). Clinkston wrote that Plaintiff presented to her as alert and oriented to person and place, but he had some deficits in date and time. She opined that Plaintiff presented with an anxious mood and affect, with significant response latencies in speech, difficulty forming and articulating thoughts, and limited problem solving skills.

## IV.    VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff's past work as a ski lift operator was light, semi-skilled work with a specific vocational preparation (SVP) code of 3, past work as a fast food worker and cleaner was light, unskilled work with an SVP code of 2, and past work as a machine operator was light to medium, unskilled work with an SVP of 2.[1]  (TR 59). The ALJ asked the VE

---

[1] "SVP is 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation'....The requisite time is ranked on a scale from one to nine, with nine

7

to consider an individual with the same age, education, and work experience as Plaintiff, who would be limited to light work, no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; who should avoid unprotected heights and dangerous, heavy machinery; and who requires an unskilled, simple, routine, repetitive, predictable job with brief and superficial interaction with supervisors, coworkers, and the public. (TR 59). The VE testified that Plaintiff could perform the job of machine operator and after-hours cleaner. (TR 59-60). The VE further testified that Plaintiff could work as a mail clerk, mail sorter, administrative support worker, and assembly worker comprising approximately 1,091,200 jobs in the national economy. (TR 60). The VE testified that all of these jobs could be performed by an individual limited to one to two step instructions. If the individual's concentration, persistence, or pace were impacted a total of twenty percent of the time or roughly one day a week because of deficits in persistence based concentration, work would be precluded. The VE further testified that an employer will generally tolerate one unexcused absence per month in addition to regularly scheduled time off. (TR 61).

## V.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since the February 2008 application date, and suffered from the severe impairments of anxiety disorder, depression, panic disorder, myofascial pain syndrome of the lower back, and history of substance abuse, he did not have an impairment or combination of impairments that meets or medically equals

---

representing the most time needed to learn a job." *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 459 (6th Cir. 2006) (citing the Dictionary of Occupational Titles (DOT) app C ¶ II (4th Ed. 1991)). In the DOT, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. SSR 00-4p, 2000 WL 1898704, at *3.

a listed impairment. (TR 16-20). The ALJ determined that Plaintiff retained the RFC to perform light work, with the exception that he must never climb ladders, ropes, or scaffolds; he must avoid all exposure to unprotected heights and moving machinery; he is limited to only occasional crawling, crouching, kneeling, stooping, balancing, and climbing of ramps and stairs; and as a result of mental impairments, he is limited to unskilled simple, repetitive, routine, predictable tasks, requiring only one to two step instructions, and only brief and superficial interaction with supervisors, coworkers, and the general public. (TR 20-25). The ALJ concluded that Plaintiff was capable of performing past relevant work as a ski lift operator, fast food worker, cleaner, and machine operator. (TR 25-27). Consequently, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act from the date the application was filed.

## VI.   LAW AND ANALYSIS

### A.   Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th

Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.      Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

### C.      Analysis

Plaintiff argues that the ALJ erred in failing to find that Plaintiff's impairments met or

10

medically equaled listing 12.03. He also argues that the ALJ failed to give good reason for finding that Plaintiff's testimony was less than credible and failed to account for all of Plaintiff's work-related limitations in the hypothetical question.

Listing 12.03, Category of Impairments, Mental Disorders reads:

*Schizophrenic, Paranoid and Other Psychotic Disorders*: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
 The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
 A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
 1. Delusions or hallucinations; or
 2. Catatonic or other grossly disorganized behavior; or
 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
 a. Blunt affect; or
 b. Flat affect; or
 c. Inappropriate affect; or
 4. Emotional withdrawal and/or isolation; AND

 B. Resulting in at least two of the following:
 1. Marked restriction of activities of daily living; or
 2. Marked difficulties in maintaining social functioning; or
 3. Marked difficulties in maintaining concentration, persistence, or pace; or
 4. Repeated episodes of decompensation, each of extended duration; OR

 C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
 1. Repeated episodes of decompensation, each of extended duration; or
 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Plaintiff bears the burden of proof that his impairments meet a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). A claimant who meets all the criteria of listing 12.03 will be deemed conclusively disabled and entitled to benefits. *Reynolds v. Comm'r*, 424 Fed. Appx. 411, 414 (6th Cir. 2011).

Plaintiff argues only that he meets listing 12.03 because Dr. Thomas Shazer found in his court-ordered psychiatric examination that Plaintiff was incompetent to stand trial due to psychosis, disorganized thoughts and possible hallucinations. Plaintiff also contends that Dr. Kravitz's opinion was prejudicial because he was paid by the Social Security Administration to testify at the hearing.

The ALJ considered Dr. Shazer's opinion that Plaintiff was incompetent to stand trial at the time of Shazer's examination. However, it did not escape the ALJ's attention that Dr. Shazer also concluded that there was a substantial likelihood that Plaintiff would attain sufficient competency to stand trial if he underwent a course of appropriate treatment. The ALJ concluded that Dr. Shazer's opinion of probable competency with appropriate treatment was probative, especially in light of Plaintiff's history of non-compliance with treatment. (TR 23).

The ALJ considered the evidence and concluded that Plaintiff had mild restrictions in activities of daily living, moderate deficits in social functioning and concentration, persistence, or pace, and no episodes of decompensation. The ALJ cited specific examples in the record that supported her assessment. Subsequently, after a review of the record, the ALJ concluded that neither the paragraph "B" or "C" criteria were satisfied. Plaintiff does not discuss whether and how he satisfies each of the requirements of listing 12.03. He also does not demonstrate how Dr. Shazer's assessment that Plaintiff was incompetent at the time of the examination to stand trial translates into a finding that all of the criteria of listing 12.03 are satisfied. As for his argument that

Dr. Kravitz's opinion was somehow prejudicial, the undersigned finds that there is substantial evidence in the record to support the ALJ's determination without relying on Dr. Kravitz's opinion. Much of that evidence was cited by the ALJ. Plaintiff has failed to sustain his burden of showing that he meets or medically equals the criteria in listing 12.03.

Next, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility and formed an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. An ALJ's findings as to the credibility of the claimant are entitled to great deference if supported by substantial evidence. *Walters v. Comm'r,* 127 F.3d 525, 531 (6th Cir. 1997). Despite deference due, the ALJ's credibility determination must contain "specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

In assessing a claimant's credibility, the ALJ must consider the entire case record, including the objective medical evidence and evidence of: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The Commissioner may rely on the testimony of a VE in response to a hypothetical question if the hypothetical question accurately portrays the claimant's physical and mental impairments. *Varley*, 820 F.2d at 779. A response to a flawed hypothetical does not constitute substantial

evidence. A hypothetical is not flawed if it is supported by the record and incorporates those limitations the ALJ finds credible. *Casey v. Sec'y of Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, the ALJ found that Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible. (TR 21). The ALJ noted that Plaintiff was admitted to the hospital in November 2005 following an intentional suicide attempt, but was discharged two days later with instructions to enroll in a substance abuse program. The ALJ observed that several physicians treated Plaintiff's mental impairments with psychotropic medications but did not provide active mental health counseling or therapy. (TR 21). She also noted Plaintiff's abandoned treatment at Hurley Mental Health Associates and Catholic Charities in 2006 and 2007, and his overall non-compliance with his mental health and substance abuse treatment plans. (TR 21-22). The ALJ reviewed the medications Plaintiff was taking, considered evidence indicating that Plaintiff could participate in activities of daily living, reviewed Plaintiff's sporadic work history prior to the alleged onset date, his repeated episodes of non-compliance, and considered that evidence along with Plaintiff's subjective statements of limitation. In assessing Plaintiff's credibility, the ALJ considered the evidence in its entirety and gave legitimate, record supported reasons for discounting Plaintiff's limiting statements. The Court should not disturb the ALJ's credibility assessment.

Next, Plaintiff argues that the ALJ found that Plaintiff has moderate restrictions and has the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks, but did not incorporate this condition in his hypothetical. He also argues that the ALJ found that Plaintiff could perform the work of a cleaner, even though the VE

testified that Plaintiff could not perform that work as he did at the ski lodge. The ALJ properly incorporated the limitations she accepted as credible in the hypothetical question to the VE and included restrictions consistent with Plaintiff's limitations. The ALJ then crafted an RFC that limited Plaintiff among other ways to unskilled, simple, repetitive, routine, predictable tasks, requiring one to two step instructions. The ALJ posed a hypothetical to the VE that included this limitation. The VE then testified that not only could Plaintiff perform past relevant work with these limitations, but there were significant jobs in the national economy that Plaintiff would also be able to perform. Based on a thorough review of the record and briefs, the undersigned finds that the ALJ's hypothetical question was based on substantial evidence and accurately portrayed Plaintiff's limitations. The ALJ's decision to deny benefits is supported by substantial evidence and should not be disturbed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection

must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 23, 2012             s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 23, 2012             s/ Lisa C. Bartlett
                                 Case Manager